**SUCCESSION OF IRBY**

——

(June 24, 1929. Opinion and Decree.)

——

Dart & Dart, of New Orleans, attorneys for plaintiff, appellee.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. Mrs. Jeanne Castellanos, as legatee, filed proceedings against Canal Bank & Trust Company, as executor of the succession of William R. Irby, to obtain $1,000 special legacy provided in the codicil of the deceased's will, and also for the return of a note in the sum of $1,000 payable on demand, and bearing 5 per cent interest, which note, together with 10 shares of stock in La Boutique du Patio Royal, Inc., were found in the deceased's bank box. Plaintiff claims $1,000 under the provisions of the codicil of the will and the return of the note on the ground that it was not a valid, subsisting obligation. Defendant admits that there is $1,000 special legacy due plaintiff, in accordance with the provisions of the codicil to the will, but in reconvention claims the $1,000, plus

5 per cent interest, attorney's fees, and recognition of its pledge of the stock to secure the note, contending that the note was a valid, outstanding obligation.

There was judgment in favor of plaintiff ordering the executor to pay the $1,000 legacy and to return the $1,000 note to plaintiff. Defendant appealed.

The question involved is one of fact; i. e., whether or not the $1,000 note of plaintiff was executed purely as a matter of form, with no intention on the part of the deceased to collect it, or whether it was a valid, subsisting obligation between the testator and plaintiff. The learned judge of the lower court after hearing three witnesses offered by plaintiff (none having been offered by defendant), decided the issue of fact in favor of plaintiff.

The evidence shows that deceased was a wealthy man, who was very kind, charitable, and liberal with his money. He was interested in the preservation of the old Paul Morphy house as a point of historical interest. The deceased had known plaintiff and Miss Charlotte Mitchell, a witness for plaintiff, socially, for a great many years. He first established plaintiff in business, organizing a corporation known as the Maison Paul Morphy, Inc., which the deceased had organized and plaintiff had successfully conducted. Desiring to help Miss Mitchell in a like manner, Mr. Irby decided to form another corporation, to be known as La Boutique du Patio Royal, Inc. The evidence shows that Mr. Irby directed everything in connection with the incorporation of this concern, including the allotment of stock and the manner of financing and handling the same, using plaintiff, Miss Mitchell, and Mr. Irby's auditor, Mr. A. C. Dumestre, as incorporators, and placing ten shares of stock each in the name of plaintiff and Miss Mitchell, and five shares in the name of Mr. Dumestre. All these certificates were placed in the deceased's bank box. Attached to the certificates of stock of Miss Mitchell and plaintiff were irrevocable powers of attorney, and the notes of each of these parties, each for the sum of a thousand dollars. The Dumestre certificate of stock had an irrevocable power of attorney attached, but was unaccompanied by a note. The whole transaction was financed by Mr. Irby, who retained possession of all of the stock that was issued, as aforesaid, including his own stock. The evidence also shows that Mr. Irby did not intend to make any money out of the transaction, and went into it simply to assist the two ladies. Mr. Dumestre testified that Mr. Irby said that the manner of handling the allotment of the stock and the notes of the two ladies in connection therewith was a mere matter of formality. The notes were payable on demand, bearing 5 per cent interest, and the record shows that neither the interest nor any part of the principal of the notes were ever paid, although they were dated May 30, 1923. Plaintiff testified that there was never any intention on her part to invest funds in the stock of this corporation, and that she considered the note a mere formality, with no obligation on her part to pay it; that it was only her implicit confidence in deceased that made her sign the note.

Miss Mitchell testified that Mr. Irby told her, at the time of the signing and giving of the note to him, that "these papers will be put in my bank box, yours and Mrs. Castellanos'. If anything happens to me, the envelope will be handed to you without any reference to my estate, and if anything happens to you, it belongs to me."

The court has reached the conclusion

that the evidence shows that, while plaintiff executed the note in the form of an obligation to pay $1,000 at no time was there any intention on the part of deceased or plaintiff that plaintiff should be obligated to pay the note. The evidence justifies the finding of the lower court.

The case clearly falls in the category of the jurisprudence to the effect that an appellate court should not disturb the judgment of a lower court on a question of fact unless it is clearly erroneous.

For the reasons assigned, the judgment appealed from is affirmed.